FILED IN OPEN COURT
DATE: 5-28-14
TIME: _____
INITIALS: ___

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,      )
                               )
        Plaintiff,             )
                               )
v.                             )      Criminal No: 2:14CR20147-01-SHM
                               )
JIMMY W. DENNIS,               )
                               )
        Defendant.             )

---

### PLEA AGREEMENT

---

The following constitutes the Plea Agreement reached between the United States, represented by Edward L. Stanton III, United States Attorney for the Western District of Tennessee; Jeffrey H. Knox, Chief, Fraud Section, Criminal Division, U.S. Department of Justice; Frederick H. Godwin, Assistant U.S. Attorney; and Daniel P. Butler, Trial Attorney, Fraud Section (collectively "the United States" or "the Government"); and defendant Jimmy W. Dennis ("Defendant"), represented by his attorney, Arthur E. Quinn ("defense counsel" or "his attorney").

1.   Defendant agrees that he will enter a voluntary plea of guilty to a one count Information charging him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The maximum punishment for this offense is as follows: imprisonment for not more than 20 years; a fine of not more than $500,000, or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater; up to 5 years of supervised release; any lawful restitution and forfeiture; and a $100 special assessment.

2. Defendant has read the Information, discussed the charge and possible defenses with defense counsel, and understands the crime charged.

3. By voluntarily pleading guilty, Defendant knowingly waives and gives up his constitutional right to plead not guilty, to compel the Government to prove him guilty beyond a reasonable doubt, to not be compelled to incriminate himself, to confront and cross-examine the witnesses against him, to have a jury or judge determine his guilt on the evidence presented, and other constitutional rights which apply to a defendant on trial in a criminal case. Defendant also knowingly and voluntarily waives any right he might have to assert any legal challenge as to the venue and personal jurisdiction for this prosecution.

4. Defendant is pleading guilty to the charge described herein because he is guilty and because it is in his best interest to do so, and not because of any threats or promises. There have been no representations made whatsoever by any agent or employee of the United States to Defendant as to what the final disposition of this matter should or will be.

5. Defendant willingly stipulates that there is a sufficient factual basis to support each and every essential element of the offense set forth in the above-referenced Information to which he is pleading guilty. In support of Defendant's guilty plea, Defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of Defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both Defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

Defendant at all relevant times was an active member of the United States Army, and attained the rank of E-8, First Sergeant. Defendant was assigned to the Humanitarian Aid Yard ("HA Yard") at Bagram Air Field, Afghanistan, in or about March 2008 as a paying agent, in

which position he remained until he left Afghanistan in or about March 2009 to return to his home base at Fort Campbell, Kentucky. As an Army non-commissioned officer and paying agent in the United States Army, Defendant was a public official within the meaning of 18 U.S.C. § 201(a)(1). The HA Yard purchased supplies from local Afghan vendors that were then provided as part of the Commander's Emergency Response Program. That program enabled U.S. military commanders to respond to urgent humanitarian relief requirements in Afghanistan, and the projects were intended to benefit the local populace in areas such as agriculture, education, health care, and sanitation until larger, more formal reconstruction projects could be initiated. As paying agent, Defendant worked with a Project Purchasing Officer ("PPO") as a team that procured supplies for the HA Yard by issuing contracts to local Afghan vendors for those supplies.

Soon after Defendant began working at the HA Yard, one of the two Afghan interpreters that worked there approached Defendant and offered him a $10,000 bribe/kickback to accept certain Afghan contractors onto the list of eligible contractors. Defendant discussed this offer with the PPO, and the two agreed to take and split the money. The two men continued to accept bribes from this interpreter regarding their actions at HA Yard. Each payment consisted of $100 bills and ranged in amount from $10,000 to $20,000, with one payment of $40,000. In or about December 2008, after the first interpreter was no longer involved, Defendant and the PPO continued to receive bribe payments from the second interpreter of money from vendors for the awarding of contracts. Defendant estimated that he personally received about $250,000 in bribes.

Defendant smuggled the money he received back to the U.S. secreted in packages addressed to his wife, his father ("Co-conspirator #1" or "Defendant's father"), and a former

3

Army friend ("Co-conspirator #2").  When Defendant's wife asked Defendant about the cash he sent in a package to his home in Clarksville, Tennessee, Defendant told her it was extra pay and to just put the package in his closet.

Defendant told his father he would be sending him some money to pay off some of Defendant's bills.  Defendant sent the money to his father from Afghanistan through the U.S. Mail in packages that contained toy "Jingle Trucks."[1]  Defendant hid the money in the rear compartment of the toy truck.  In an effort to get through the inspection process at the Bagram Post Office, Defendant wrapped the truck heavily in bubble wrap and tape.  Defendant estimated he sent approximately $80,000 to $100,000 to his father.  Defendant instructed his father to pay off Defendant's wife's car loan and Defendant's motorcycle loan.  On one visit home during the deployment, Defendant's father told Defendant that he had been depositing the money into his checking account and the bank had recently questioned the cash deposits so he stopped.  Defendant's father told Defendant he had about $20,000 left.  In addition to the Jingle Trucks, just prior to Defendant's return to the U.S., Defendant shipped a "Hope Chest" to his father's address which contained approximately $100,000 in cash hidden in a concealed compartment.  The chest was stored in Defendant's father's shed until Defendant returned to the U.S.

While on leave, Defendant met Co-conspirator #2 and told him he had some money he made by accepting kickbacks.  Defendant asked Co-conspirator #2 if he could send the money to Co-conspirator #2 to "run through his company."  Co-conspirator #2 agreed to launder the money, but the two did not have an agreement as to how Co-conspirator #2 would do it.  Defendant sent the money from Afghanistan in "Jingle Trucks" through the U.S. Mail.

---

[1]  According to Wikipedia, the term "Jingle Truck" is U.S. military slang for a very distinctive, colorfully decorated truck or bus in Afghanistan and Pakistan.  *See* http://en.wikipedia.org/wiki/Jingle_truck.

4

Defendant estimated that he sent Co-conspirator #2 approximately $60,000. In addition to the money in the toy trucks, Defendant told Co-conspirator #2 to call Defendant's father and arrange to have Defendant's father send the remaining $20,000 to Co-conspirator #2. Defendant and his father started to receive "salary" checks from Co-conspirator #2's landscaping company. The checks were mailed to the addresses of both Defendant and his father. Defendant also received a W-2 form from the landscaping company. Defendant's wife had power of attorney for Defendant. She signed the checks and deposited them into their joint bank account. Defendant falsely told his wife that the money was profit from an investment he made with Co-conspirator #2. In late 2009 or early 2010, Defendant had a falling out with Co-conspirator #2. Co-conspirator #2 had closed the landscaping business and Defendant felt he received back a lot less than he had sent to Co-conspirator #2.

Defendant stated that he used some of the money he obtained in Afghanistan to pay off some bills and take vacations. He also used the money to purchase a $37,000 2009 Harley Davidson motorcycle. Defendant used some of the cash to purchase U.S. Postal Service money orders to pay off the motorcycle.

6. Defendant understands that the matter of sentencing is within the sole discretion of the Court. Although Defendant has discussed sentencing with his attorney, Defendant understands that any discussions with defendant's attorney or anyone else regarding the United States Sentencing Guidelines ("U.S.S.G.") are merely rough estimates and the Court is not bound by those discussions. Defendant understands that the sentencing guidelines are advisory and are not mandatory for sentencing purposes. Defendant understands the Court could impose the maximum term of imprisonment and fine allowed by law, including the imposition of supervised release. Understanding the provisions of the paragraph immediately above, the Government and

Defendant agree to the following applicable U.S.S.G. considerations and factors, which the parties believe provide a fair, just, and reasonable resolution of this matter.

| § 2S1.1(a)(1) | Base Offense Level | 14 |
|---|---|---|
| (using underlying based offense level for bribery, § 2C1.1(a)(1)) | | |
| § 2C1.1(b)(1) | More than one bribe | 2 |
| § 2C1.1(b)(2) | More than $200,000, not more than $400,000 | 12 |
| (using table in § 2B1.1(b)(1)(G)) | | |
| § 2S1.1(b)(2)(B) | Conviction under 18 U.S.C. § 1956 | 2 |
| Total offense level | | 30 |

7. Defendant understands that given the facts in the possession of the United States at the time of the writing of this agreement the United States does not oppose Defendant receiving full acceptance of responsibility credit pursuant to U.S.S.G § 3E1.1. Defendant understands that if the United States receives information between the signing of this agreement and the time of the sentencing that Defendant has previously engaged in, or if engaged in the future, in conduct inconsistent with the acceptance of responsibility, including, but not limited to, participation in any additional criminal activities between now and the time of sentencing, this position could change. Further, Defendant understand that whether or not acceptance of responsibility credit pursuant to Section 3E1.1 is granted is a matter to be determined by the Court. Failure of the Court to grant acceptance of responsibility credit is not a basis for Defendant to withdraw his guilty plea.

8. Under the calculations above, the resulting offense level would be 27. With a Criminal History Category of I, which the parties believe is applicable, the resulting sentence under the U.S.S.G. would be 70-87 months, and a fine range of $12,550 to $125,000. The United States will recommend a sentence at the low end of the U.S.S.G. range, whatever the range is determined to be by the District Court.

6

9. Defendant understands that any statement made in the course of the plea colloquy may be used against him in any criminal prosecution. Defendant knowingly, intelligently and voluntarily waives any objection based on Rule 410 of the Federal Rules of Evidence.

10. Defendant understands that 18 U.S.C. § 3742 gives him the right to appeal the sentence imposed by the Court. Acknowledging this, Defendant knowingly and voluntarily waives his right to appeal any sentence imposed by the Court and the manner in which the sentence is determined so long as the sentence is within the statutory maximum specified above. This waiver is made in exchange for the concessions made by the United States in this Plea Agreement. The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct or ineffective assistance of counsel.

11. Defendant understands that 28 U.S.C. § 2255 provides an additional method by which to challenge the sentence imposed by the Court. Acknowledging this, Defendant knowingly and voluntarily waives his right to file an action pursuant to Section 2255. The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct or ineffective assistance of counsel.

12. Defendant understands that persons convicted of crimes are required to pay a mandatory assessment of $100 per felony count of conviction. Defendant agrees that payment of this assessment, in full, is a condition of this agreement and that such payment is due at the time of his sentencing.

13. Defendant agrees, if appropriate, to file accurate amended federal income tax returns with the United States Internal Revenue Service for calendar years 2008 and 2009.

7

14. Defendant agrees to, upon request, provide the United States Probation Office and the attorney for the United States complete and accurate personal financial statements and any and all other records and documents pertaining to Defendant's financial condition.

15. Defendant agrees, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(1), to forfeit and give to the United States prior to the date of sentencing any right, title, and interest which Defendant may have in assets constituting or derived from proceeds which he has that Defendant obtained directly or indirectly as a result of the violation to which he is pleading guilty and/or any property, real or personal, involved in the conspiracy to commit money laundering. Defendant further agrees not to contest the administrative, civil, or criminal forfeiture of any such asset(s). These assets include, but are not limited to, any assets charged in the Information filed by the United States. Defendant agrees that any asset charged in the Information is forfeitable as proceeds of the illegal activity for which he is pleading guilty. With respect to any asset which Defendant has agreed to forfeit, Defendant waives any constitutional and statutory challenges in any manner (including direct appeal, collateral challenges of any type, habeas corpus motions or petition, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution. Specifically, Defendant consents to the entry of a money judgment against him in the amount of $250,000 representing a sum of money constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the offense of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

16. Defendant has indicated he desires to cooperate with the United States in the investigation of others. The parties have agreed that U.S.S.G. § 1B1.8 will apply. Relevant

8

conduct disclosed by Defendant that was previously unknown to the United States will not be used to determine the applicable guideline range.

17. Defendant agrees to cooperate fully and truthfully with the United States and its designated representatives and with agencies identified by the United States. Such cooperation shall include, but is not limited to, complete and truthful debriefings and testimony at trial and in other proceedings if requested, involving any matters arising out of this cause.

18. The United States agrees to consider making a motion pursuant to U.S.S.G. § 5K1.1 on behalf of Defendant at the time of his sentencing. Defendant understands that the only promise being made is to consider a motion pursuant to § 5K1.1. This is not a promise to make such a motion. The decision whether to make a motion pursuant to § 5K1.1 is within the sole discretion of the United States. Moreover, the decision whether or not to make such a motion will be made only after it has been determined that Defendant has given complete and truthful cooperation and/or testimony in the matters under investigation and prosecution.

19. Defendant understands that if his testimony is anything but complete, truthful, and candid, the United States will make the sentencing court aware of this and will seek enhancement of his sentence based upon any lack of candor or truthfulness, and further will prosecute Defendant for any crimes that might be provable. Defendant also understands that any new criminal activity would be another reason not to make such a motion.

20. Defendant understands the Government will be free to fully describe the nature of the offense charged and the evidence in this case.

21. Defendant understands that a thorough presentence investigation will be conducted and sentencing recommendations independent of the United States will be made by the preparer of the presentence report, which the Court may adopt or take into consideration.

22. Defendant understands this agreement does not apply to any crimes that he may have committed (other than those specifically set forth herein), or that he may commit hereafter, including perjury. Should it be judged by the Government that Defendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting obstruction or impeding justice within the meaning of U.S.S.G. § 3C1.1 from the date of signing this plea agreement to the date of sentencing, or if Defendant attempts to withdraw his plea, Defendant understands the Government will be released from its obligations and would become free to argue for any sentence within the statutory limits. Defendant further understands that such a breach by him would not release him from the plea of guilty.

23. Defendant understands that this agreement is limited to the United States Attorney's Offices for the Western and Eastern Districts of Tennessee and the Fraud Section, Criminal Division, U.S. Department of Justice and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority.

24. Defendant understands that this Plea Agreement constitutes the entire agreement between him and the United States. Defendant has not been coerced, threatened, or promised anything other than the terms of this plea agreement, in exchange for his plea of guilty. Defendant understands that his attorney will have the opportunity to speak on his behalf and Defendant will also have an opportunity to personally address the Court and present any information to mitigate his sentence prior to sentencing being imposed.

25. Defendant has read or had the foregoing Plea Agreement read to him in a language he understands and has discussed the terms of this Plea Agreement with his attorney, Arthur E. Quinn, and is satisfied with his attorney's advice and counsel. Being aware of all of the possible

10

consequences of his plea, Defendant has independently decided to enter this plea on his own free will, and is affirming this agreement on the date and by his signature below.

EDWARD L. STANTON III
United States Attorney

JEFFREY H. KNOX
Chief, Fraud Section, Criminal Division
U.S. Department of Justice

5/28/14
Date

By: _____
Frederick H. Godwin
Assistant United States Attorney

5/28/14
Date

By: _____
Daniel P. Butler
Trial Attorney, Fraud Section

5/28/14
Date

By: _____
Jimmy W. Dennis
Defendant

5/28/14
Date

By: _____
Arthur E. Quinn
Attorney for Defendant